FILED
2022 JAN 21 PM 12:14
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TAMMY B., f/k/a TAMMY H.<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br><br>Case No. 2:20-cv-00508-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Tammy B.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. (*See* Pl.'s Opening Br. 2, Doc. No. 22.) The Administrative Law Judge ("ALJ") denied her application, finding Ms. B. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 15–25, Doc. Nos. 9–12.) After careful review of the record and the parties' briefs,[2] it is apparent that the ALJ properly considered Ms. B's subjective symptoms and his determination is supported by substantial evidence. The Commissioner's decision is affirmed.[3]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only. Ms. B. filed this case under a previous name, Ms. H.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 17.)

1

STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the record as a whole to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a scintilla." *Id.* at 1154. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court may not substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In making the disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) the claimant presently engages in substantial gainful activity;

2) the claimant has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) the claimant possesses a residual functional capacity to perform past relevant work; and

5) the claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

See 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Ms. B. filed an application for disability insurance benefits in March 2017, alleging disability beginning January 8, 2016. (Tr. 15, 282, 284, 325.) Ms. B. claimed disability due to a number of physical and mental impairments. (*Id.* at 20, 303, 329–30.) Specifically, she complained of migraines, degenerative disc disease, fibromyalgia, osteoarthritis, anxiety, depression, obsessive compulsive disorder, posttraumatic stress disorder, sleep apnea, and chest pain. (*Id.* at 303.) In addition, she has a history of mental health impairments. (*Id.* at 20.) The

3

ALJ held a hearing on Ms. B.'s claims on July 1, 2019. (*See id.* at 34–69.) On July 24, 2019, the ALJ issued a decision, finding Ms. B. not disabled and denying her claims. (*Id.* at 15–25.)

At step two of the sequential evaluation, the ALJ determined Ms. B. had the severe impairments of degenerative disc disease, fibromyalgia, migraines, obesity, adjustment disorder with mixed anxious and depressed mood, and personality disorder. (*Id.* at 17.) At step three, the ALJ found Ms. B.'s impairments did not meet or equal an impairment listing. (*Id.* at 18–19.) At step four, the ALJ determined Ms. B. had the residual functional capacity ("RFC") to perform light work with additional limitations:

> [S]he can frequently climb ramps and stairs. She can occasionally climb ladders and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally be exposed to loud noise, unprotected heights, and dangerous moving machinery. She can frequently reach overhead with her bilateral upper extremities. She has the ability to understand, remember, and carry out simple, routine, and repetitive tasks. She can perform goal-oriented but not assembly line-paced work. She can occasionally interact with co-workers, supervisors, and the general public. She can adapt to routine changes in the workplace.

(*Id.* at 19–20.) Relying on testimony from a vocational expert, the ALJ found Ms. B. incapable of performing past relevant work as a machine packager, bakery line worker, or home attendant. (*Id.* at 23.) However, the ALJ concluded jobs existed in significant numbers in the national economy which Ms. B. could perform. (*Id.* at 24.)

The Appeals Council denied Ms. B.'s request for review, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 1–3.)

## DISCUSSION

Ms. B. raises a single claim of error. She argues the ALJ's findings as to Ms. B.'s RFC were not supported by substantial evidence. (Opening Br. 13, Doc. No. 22.) Specifically, she claims the ALJ failed to support his rejection of Ms. B.'s subjective complaints regarding her limitations with substantial evidence. (*Id.* at 14–17.) According to Ms. B., the ALJ also

4

erroneously failed to consider generalized, legitimate reasons a claimant's complaints may be inconsistent with objective medical evidence, such as:

- the focus of physicians on diagnosis and treatment instead of functional limitations, leading to critical omissions in the medical records;
- the focus of specialists on singular impairments, which necessarily ignores the claimant's limitations when considered as a whole;
- the tendency of ALJs to reject attempts by physicians to opine on functional limitations, characterizing such attempts as nonbinding opinions on the ultimate question;
- the fact that unemployed claimants may only be able to afford simple, routine treatment, rather than sophisticated testing or evaluations.

(Opening Br. 17–19, Doc. No. 22.)  Ms. B. contends the inconsistencies these real-world factors inevitably cause should not undermine the credibility of subjective complaints.  (*Id.* at 20–21.)

Ms. B. claimed her subjective symptoms limited her ability to walk, stand, and sit, among other things.  She asserted she could only walk for five to ten minutes with a cane (with pain), and would have to change positions after sitting for two minutes or standing for three to five minutes.  (Tr. 20, 50–51, 53.)  Ms. B. reported she spent 85% to 95% of her day lying flat due to pain.  (*Id.* at 20, 53–54.)  And she testified she suffered from numbness, tingling, and loss of sensation in her arms.  (*Id.* at 54–55.)  According to Ms. B., the ALJ wrongfully refused to credit these complaints—and the functional limitations they caused.  (Opening Br. 15–17, Doc. No. 22.)

Finally, Ms. B. specifically criticizes the ALJ's failure to include limitations in his RFC evaluation related to Ms. B.'s numbness and migraines.  (*Id.* at 22.)  The failure to properly account for these conditions, according to Ms. B., led the ALJ to erroneously frame the RFC determination.  (*Id.*)  At the hearing, the ALJ requested the vocational expert's opinion as to Ms.

5

B.'s ability to perform work under two different hypothetical questions. (Tr. 67.) One hypothetical question tracked Ms. B.'s testimony and subjective complaints, while the other did not. (Opening Br. 23, Doc. No. 22; Tr. 67.) The vocational expert testified the hypothetical question fully encompassing Ms. B.'s subjective complaints would preclude all ability to work. (Opening Br. 23–24, Doc. No. 22; Tr. 67.) According to Ms. B., the ALJ factually and legally erred by relying on the other hypothetical scenario, rejecting Ms. B.'s subjective complaints and failing to account for difficulties with her productivity. (Opening Br. 24, 27, Doc. No. 22.)

For her part, the Commissioner argues the ALJ validly concluded Ms. B.'s symptomatic complaints were unsupported by objective medical evidence and other evidence in the record.[4] (Answer Br. 9–15, Doc. No. 23.) And the Commissioner suggests Ms. B.'s arguments reflect her disagreement with the legal framework governing the Commissioner's analysis rather than her disagreement with the ALJ's particular determinations. (*Id.* at 8.)

Ms. B.'s arguments fail. The ALJ properly accounted for Ms. B.'s subjective symptoms insofar as they were supported by the whole record. (*See, e.g.*, Tr. 20 ("In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.").) And to the extent Ms. B's claimed limitations were not supported by the record, the ALJ provided five reasons for his rejection of them: (1) Ms. B. exaggerated her symptoms; (2) her symptoms were inconsistent with objective medical evidence; (3) Ms. B. only sought conservative treatment for impairments which were allegedly debilitating; (4) Ms. B.'s medical visits were often for purposes of obtaining evidence

---

[4] The Commissioner also devotes a portion of her brief to defending the weight the ALJ assigned to various medical (and other) opinions. (*See* Answer Br. 16–20, Doc. No. 26.) Where Ms. B.'s claim of error relates only to the ALJ's approach to her subjective symptoms, the weight otherwise assigned to various opinions is not addressed.

to support her disability claim rather than for purposes of treatment; and (5) Ms. B.'s claimed symptoms were inconsistent with her daily activities. (Tr. 20–23.) Each of these reasons is adequately supported by the record.

First, the record contains evidence suggesting Ms. B. exaggerated her symptoms. While "an ALJ's impression that a claimant exaggerated [her] symptoms, *alone*, cannot support a finding that the claimant could perform the full range of work at a given RFC level," *Garcia v. Shalala*, No. 92-2238, 1993 U.S. App. LEXIS 21846, at *7 (10th Cir. Aug. 26, 1993) (unpublished), here, the ALJ relied on much more. First and foremost, the ALJ's conclusion about Ms. B.'s symptom exaggeration is not the result of the ALJ's subjective impressions; the exaggeration is revealed in Ms. B.'s medical records. For instance, an internal medicine consultative examiner, Dr. Fryans, noted that although Ms. B. asked him to push her wheelchair, the front desk staff reported their observation to him that Ms. B. had advanced it on her own. (Tr. 792.) Dr. Fryans also observed that during his exam, Ms. B.'s range of motion and strength were largely normal and intact, and she could manage without assistance. (*Id.* at 792–93.) The consultive psychologist, Dr. Carlisle, made similar observations, finding it difficult to determine whether "everything is as bad" as Ms. B. said or whether "she is just a chronic complainer." (*Id.* at 22, 807.) Upon review, Dr. Morrison, a disability examiner, found this evidence suggestive of "lack of effort" or "possible exaggeration." (*Id.* at 121.) In other words, the ALJ's conclusions on this point were properly supported by the record.

Second, the ALJ's conclusion as to the inconsistencies between Ms. B.'s allegations and the objective medical evidence is well-supported. (*See id.* at 18, 20–21.) For instance, the medical evidence conflicts with Ms. B.'s claim that she relied on a cane or a wheelchair to ambulate. Ms. B. was found to have a normal, intact, and/or steady gait in October 2016, February 2017, August 2017, and September 2017, (*id.* at 506, 642, 868, 1025), despite her claim

7

of needing a cane in December 2016, (*id.* at 611). And the ALJ limited Ms. B. to sedentary work. (*Id.* at 19–20.) Ms. B.'s self-reported mental-health symptoms such as of lack of focus and impaired memory also conflict with objective medical evidence. The ALJ relied on a number of examinations showing Ms. B. had normal (or, at worst, mildly impaired) memory, attention, and concentration. (*Id.* at 19 (citing *id.* at 506, 792, 867, 1169).)

Third, the ALJ legitimately considered the fact that Ms. B. only sought and obtained conservative treatment—treatment which was inconsistent with her reports of debilitating symptoms. *See* SSR No. 16-3p, 2016 SSR LEXIS 4, at *23 (noting if the "extent of the treatment sought" is incomparable with the subjective complaints, or prescribed treatment is not followed, the ALJ may find the subjective symptoms inconsistent with the record). For instance, despite claims of persistent and disabling migraine headaches, (Tr. 63, 329), Ms. B. did not require or obtain any particularly intensive headache treatment, (*id.* at 560, 569, 609). And she declined medical invention for other complaints, such as her fibromyalgia symptoms. (*Id.* at 642–43, 685.)

As a related issue, the ALJ discounted Ms. B.'s subjective complaints in part because the focus of her medical visits appeared to be obtaining documentation to support her disability claim rather than obtaining a diagnosis or treatment. (*See id.* at 567, 578, 580, 582, 584, 586, 642, 669.) While, on its own, this would be insufficient to call into question a report of subjective symptoms, it carries more weight when coupled with the facts that Ms. B. rejected treatment recommendations and sought only conservative treatment to begin with (as noted above).

Fifth, notably, the ALJ did not find Ms. B.'s subjective symptoms to be unsupported based on exaggeration, objective medical evidence, and minimal treatment alone. The ALJ also considered Ms. B.'s daily activities, consistent with 20 C.F.R. § 404.1529(c)(3)(i). Ms. B.

maintains her ability to engage in some activities of daily living cannot be considered an inconsistency with her subjective symptoms. (Opening Br. 21–22, Doc. No. 22.) While it is true that "sporadic performance" of activities "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987), the ALJ can consider activities which undercut reported symptoms, *see Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th 2010); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990). Among other things, the ALJ in this case relied on evidence indicating Ms. B. could drive a car—which is inconsistent with her claim of only being able to sit for two minutes at a time. (*See* Tr. 19 (citing *id.* at 42, 332, 401).) The ALJ also observed that Ms. B. was able to go places alone and required no additional support with personal or household tasks. (*Id.*)

Each of the ALJ's considerations was proper. The ALJ assessed Ms. B.'s subjective complaints in great detail and carefully evaluated them in light of the record as a whole. Ms. B.'s generalized theories for inconsistencies between a claimant's subjective symptoms and her medical record do not undercut the ALJ's analysis because Ms. B. has not provided facts or record evidence establishing these theories apply here. As the Commissioner noted, these generalized complaints appear to reflect policy and regulatory disagreements, more than anything. (*See* Answer Br. 8, Doc. No 26.) The ALJ's choice to exclude limitations related to Ms. B.'s claims of numbness and migraines in his RFC evaluation reflects his rejection of her subjective complaints insofar as they are inconsistent with objective medical evidence, the treatment sought, and her activities of daily living.

Finally, the ALJ did not err in his use of and reliance on the testimony of the vocational expert. At step five of the sequential evaluation process, the Commissioner has a burden of production to show work the claimant is capable of performing exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). In this case, the ALJ relied on the testimony

of a vocational expert to meet this burden. The ALJ submitted two different hypothetical scenarios to the vocational expert. One related to whether an individual of Ms. B.'s age, education, work experience, and RFC could perform work existing in significant numbers in the national economy. (Tr. 66–67.) The expert testified this hypothetical individual could perform such work. (*Id.* at 67.) The next hypothetical scenario incorporated more functional limitations. (*Id.* at 67.) The expert concluded this second, hypothetical individual would be unable to perform any work "on a full time, sustained basis." (*Id.*) As noted above, the ALJ properly found Ms. B. did not have the limitations reflected in the second hypothetical. "The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (superseded on other grounds as noted in *Black v. Barnhart*, No. 05-172-P-H, 2006 U.S. Dist. LEXIS 35853, at *18 (D. Me. June 1, 2006) (unpublished)). Accordingly, Ms. B. has not established the ALJ factually or legally erred in his use of the vocational expert.

The ALJ's evaluation of Ms. B.'s subjective complaints reflects a proper consideration of relevant factors. And far more than a "mere scintilla" of evidence supports the ALJ's conclusions. *See Lax*, 489 F.3d at 1084. The record contains substantial evidence to support the ALJ's finding that not all of Ms. B.'s symptoms were as serious as she alleged. Where findings are supported by substantial evidence, the court defers to the ALJ. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (noting that credibility findings "are peculiarly the province of the finder of fact" and will not be upset "when supported by substantial evidence").

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 21st day of January, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge
